IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOSE MANUEL SANTIAGO,<br><br>Defendant. | Case No. 1:23-cr-198<br><br>The Hon. Leonie M. Brinkema<br><br>Hearing: May 3, 2024 |

**POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING**

The United States of America, through its undersigned counsel, in accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission Guidelines Manual ("Guidelines" or "U.S.S.G."), hereby submits its position with respect to sentencing of Jose Manuel Santiago ("the defendant" or "Santiago"). For the reasons set forth below, the United States respectfully submits that a meaningful term of imprisonment, within the guidelines range or not too far below, would be reasonable and appropriate under 18 U.S.C. § 3553(a).

**I.  FACTUAL SUMMARY**

At the height of the COVID-19 pandemic, in 2020, defendants Jose Santiago, Rosson Hamilton, Vernon Lavoie, and others, participated in a scheme to take advantage of the lockdown by stealing identities and selling residential properties out from under absent homeowners to unsuspecting third-party buyers. Santiago played the role of the money manager and the enforcer when it came to people like Lavoie. Lavoie and others opened bank accounts, posed as home sellers, and forged signatures at closings before mobile notaries.  Hamilton appears to played the role of operating the imposter email accounts used in the scheme.

1

The defendants' actions had real consequences for the victims. Individual B.E., for instance, lost many personal items of value, including military memorabilia, after the defendants authorized the disposal of his property as part of the sale. Victims suffered anxiety and financial harm as a result of their identities being stolen and abused in the scheme. One victim is still embroiled in civil litigation to try to recover her home that the defendants wrongfully sold out from under her.

Defendant Santiago did not need to commit this crime. He was a successful businessman, legitimately earning around $200,000 per year. Of those involved in the scheme, he had the least reason to participate. He has a number of children and even grandchildren. He had a house and legitimate business complete with capital equipment and an office. None of the others were so stable or so financially secure.

Sadly, this otherwise capable and industrious person had a history of running various side hustles, or scams, with people like Lavoie. First, there was long running phone scam. There is the elder abuse allegation in Florida, which is separate from this case. *See* PSR ¶ 60. And now the defendant comes before this Court for the present scheme. All of this occurred after a prior narcotics conviction and jail sentence, PSR ¶ 55, which should have woken the defendant up. Greed, an easy buck, a disregard for others, and perhaps a sense of thrill or adventure has put him back into the criminal life he has led and for which he now faces consequences before this Court.

## II. GUIDELINES CALCULATION

Although the Supreme Court rendered the federal Sentencing Guidelines advisory in *United States v. Booker*, it held that a sentencing court must "consult [the] Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); s*ee also United States v. Clark*, 434 F.3d 684, 685 (4th Cir. 2006). The Supreme Court has directed district courts to "begin all

2

sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). The "Guidelines should be the starting point and the initial benchmark," but the sentencing court must also "consider all of the [18 U.S.C.] § 3553(a) factors" in determining the appropriate sentence. *Id.* at 49–50; *see also Clark*, 434 F.3d at 685.

Here, the Probation Officer has correctly calculated the defendant's guidelines, which are an offense level 24, criminal history category I, for a guidelines range of 51 to 63 months.

The guidelines enhancements applicable here, such as number of victims/substantial harm, sophisticated means, and possession of counterfeit access devices, capture the range of very serious criminal conduct at issue in this case. The consequences the victims have suffered may well not be adequately reflected in the loss table of § 2B1.1. Thus, the guidelines are not overstated as to this case and this defendant, as it involves individual victims and an egregious disregard for consequences to innocent buyers and sellers of homes.

### III.  IMPOSITION OF SENTENCE

Pursuant to 18 U.S.C. § 3553(a), the Court should consider: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to, among other things, reflect the seriousness of the offense and adequately deter criminal conduct; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records found guilty of similar conduct; and (7) the need to provide restitution to victims of the offense. Ultimately, the sentence imposed must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260–61. The advisory guidelines range is an important starting point because it captures the seriousness of the offense. *United States v. Goff*, 501 F.3d 250, 257 (3d Cir. 2007) ("[T]he Guidelines reflect a carefully considered

3

assessment of the seriousness of federal crimes").

For the reasons stated below, the government recommends a prison sentence within, or not too far below, the applicable guidelines range.

### A. History and Characteristics of the Defendant

This defendant was not without financial resources or the ability to earn a good income from legitimate work. He is an intelligent individual. This was hardly a crime of necessity, nor was it simply an out-of-character, momentary lapse. Inescapably, the only logical conclusion is that it was a crime of the defendant's own choice, motivated in part by greed, and perhaps by other unfathomable factors.

The history and characteristics of the defendant support a jail sentence. Santiago knew that what he was doing was fraudulent. And as a reasonably successful businessman, he had no need to commit this crime. This kind of criminal conduct, willful and entirely a crime of choice and greed, counsels in favor of a carceral sentence of sufficient length to deter him from future misconduct.

### B. Deterrence

A meaningful custodial sentence is also called for in this case to promote general deterrence. Absent some meaningful term of imprisonment, general deterrence — "the effort to discourage similar wrongdoing by others through a reminder that the law's warnings are real and that the grim consequence of imprisonment is likely to follow"—will not be achieved. *United States v. Bergman*, 416 F. Supp. 496, 499 (S.D.N.Y. 1976). The Court must also consider how to deter others as a general matter from engaging in similar conduct. *See, e.g.*, *United States v. Morgan*, 635 F. App'x 423, 450 (10th Cir. 2015) ("General deterrence comes from a probability

4

of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionally minimized.").

This was a deliberate and calculated crime of choice. It is therefore more susceptible to general deterrence and more in need of a significant sentence to achieve that deterrence. *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir. 2006) (finding that crimes that are "rational, cool, and calculated" rather than "crimes of passion or opportunity" are "prime candidates for general deterrence") (citation omitted). Moreover, crimes like this are lucrative and can be difficult to detect. *See, e.g., United States v. Hefferman*, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it.")

A real sentence of some duration in the Bureau of Prisons is, therefore, necessary to send the appropriate message to this defendant—and importantly, to others— that those who engage in this conduct will be caught and punished significantly.

### C. Promote Respect for the Law, Just Punishment

A substantial jail sentence is also necessary to promote respect for the law and to vindicate the rights of victims in this case. White collar defendants should not get a total pass from jail, which is a normal consequence of serious felonious activity. *See, e.g., United States v. McHan*, 920 F.2d 244, 248 (4th Cir. 1990); *see also United States v. Peppel*, 707 F.3d 627, 640-41 (6th Cir. 2013); *United States v. Morken*, 133 F.3d 628, 630 (8th Cir. 1998); *see also United States v. Vrdolyak*, 593 F.3d 676, 682 (7th Cir. 2010) (reversing light sentence because trial court gave undue weight to letters urging leniency).

Here, victims suffered direct and collateral consequences of this identity theft and

fraudulent home sales scheme. For example, in the transaction involving A.S.'s home on Perch Street, the third-party purchaser has refused to return the home to A.S. despite acknowledging the fraudulent nature of the sale. That has led to civil ligation that is still ongoing. *See* Case Number 22-CA-1390, Hillsborough County, Florida (on line case docket). Individual B.E. lost many of his personal belongings, including his military memorabilia and an antique vehicle.

### D.    Avoid Unwarranted Sentencing Disparities

A sentence that bears some meaningful relationship to the guidelines is best calculated to avoid unwarranted sentencing disparities. As the Seventh Circuit has noted, "[s]entencing disparities are at their ebb when the Guidelines are followed, for the ranges are themselves designed to treat similar offenders similarly." *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) (noting light sentence for cooperating defendant was appropriate and lengthy sentence for defendant who did not was appropriate, and was not a disparity, but a justifiable difference). A co-conspirator with arguably less culpability, Vernon Lavoie, received a sentence of 31 months. Accordingly, Santiago's sentence should not be lower than that of Lavoie.

Given all the factors discussed above, the government believes that a jail sentence within or not too far below the applicable guidelines range is the just sentence to address all of the 3553(a) factors. This was entirely a crime of choice. It went on for quite a period of time and was calculated to capitalize on pandemic restrictions.

### IV.  CONCLUSION

Based on the 18 U.S.C. § 3553(a) factors, a sentence within the applicable guidelines range, or not too far below it, is appropriate in this case, even though substantial downward variances are not uncommon in other many other economic crimes cases in this courthouse. The government

would submit that those cases are factually different and not an appropriate reference point for this particular case of this specific defendant.

The government also requests a restitution order and a term of supervised release be imposed in this case.

                                          Respectfully submitted,

                                          Jessica D. Aber
                                          United States Attorney

By: _____
       Russell L. Carlberg
       Christopher Hood
       Assistant United States Attorneys
       United States Attorney's Office
       2100 Jamieson Avenue
       Alexandria, VA 22314
       Telephone: (703) 299-3868
       Facsimile: (703) 299-3980
       Email: Russell.L.Carlberg@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2024, I caused a copy of the foregoing memorandum to be filed with the Clerk of Court using the CM/ECF system, which will automatically generate a Notice of Electronic Filing (NEF) to all counsel of record.

A copy has also been sent via email to:

Kelly Smihal
United States Probation Officer
Kelly_Smihal@vaep.uscourts.gov

/s/
Russell L. Carlberg
Assistant United States Attorney
United States Attorney's Office
Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Telephone: (703) 299-3868
Facsimile: (703) 299-3980
Email: Russell.L.Carlberg@usdoj.gov